UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**RICK STROTHER,**

 **Plaintiff,**

v.            **Case No. 8:19-cv-1365-T-36AAS**

**ANDREW SAUL, Commissioner,**
**Social Security Administration,**[1]

 **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

  Rick Strother seeks judicial review of a decision by the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g).  After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the parties' joint memorandum, it is **RECOMMENDED** that the Commissioner's decision be **REMANDED**.

**I. PROCEDURAL HISTORY**

  Mr. Strother applied for a period of disability and DIB, alleging an amended disability beginning on February 11, 2014. (Tr. 21).  Disability examiners denied Mr. Strother's application initially and after reconsideration. (Tr. 420, 440).  Mr. Strother

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration.  Under Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul should be substituted for former Acting Commissioner Nancy A. Berryhill as the defendant in this suit.  No further action needs to be taken to continue this suit due to the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

then requested a hearing before an ALJ and, on December 19, 2018, the ALJ found Mr. Strother not disabled. (Tr. 17–35).

The Appeals Council denied Mr. Strother's request for review, making the ALJ's decision final. (Tr. 1). Mr. Strother seeks judicial review of the Commissioner's final decision. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Background

Mr. Strother was fifty-seven years old on the date of the ALJ's decision. (Tr. 177). He completed high school and has past work experience as a maintenance worker, houseman/cleaner, and van driver. (Tr. 33).

### B.   Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[2] 20 C.F.R. § 404.1520(a). First, if a claimant is engaged in substantial gainful activity,[3] he is not disabled. § 404.1520(b). Second, if a claimant has no impairment or combination of impairments that significantly limit his physical or mental ability to perform basic work activities, he has no severe impairment and is not disabled. §§ 404.1520(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an

---

[2] If the ALJ determines the claimant is under a disability at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

[3] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. § 404.1572.

impairment in the Listings, he is not disabled. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. Fourth, if a claimant's impairments do not prevent him from performing past relevant work, he is not disabled. § 404.1520(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[4] Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from performing other work in the national economy, he is not disabled. § 404.1520(g).

The ALJ determined Mr. Strother engaged in no substantial gainful activity since February 11, 2014, the amended alleged onset date. (Tr. 21). The ALJ found Mr. Strother had these severe impairments: bipolar disorder, unspecified personality disorder, and attention deficit hyperactivity disorder (ADHD). (*Id.*). Nonetheless, the ALJ found Mr. Strother's impairment or combination of impairments fail to meet or medically equal the severity of an impairment included in the Listings. (Tr. 22).

The ALJ found Mr. Strother had an RFC to perform a full range of all work at all exertional levels, with these non-exertional limitations:

> Mr. Strother is limited to understanding and carrying out no more than simple, routine, repetitive unskilled tasks with basic decision-making, adjustment to simple changes in the work setting, and having occasional interaction with others. [Mr. Strother] must avoid extreme heat.

(Tr. 23).

---

[4] A claimant's RFC is the level of physical and mental work she can consistently perform despite her limitations. 20 C.F.R. § 404.1545.

3

Based on these findings, the ALJ determined Mr. Strother could perform his past relevant work as a housekeeper/cleaner. (Tr. 33). Thus, the ALJ found Mr. Strother not disabled. (Tr. 35).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to determining whether the ALJ applied correct legal standards and whether substantial evidence supports her findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the

entire record to determine the reasonableness of the Commissioner's factual determinations).

### B. Issues on Appeal

Mr. Strother raises three issues on appeal. First, Mr. Strother argues the ALJ failed to resolve conflicts between the vocational expert's (VE) testimony and the Dictionary of Occupational Titles (DOT). (Doc. 26, pp. 26–30). Second, Mr. Strother argues the ALJ failed to properly consider and weigh the medical evidence. (*Id.* at pp. 35–38). Third, Mr. Strother argues the ALJ erred in finding he had no severe impairments and exertional limitations. (*Id.* at pp. 44–46).

#### 1. Whether the ALJ failed to resolve apparent conflicts between the VE's testimony and the DOT.

Mr. Strother argues the ALJ erred in finding Mr. Strother can perform his past relevant work. (Doc. 26, pp. 26–29). Specifically, Mr. Strother argues the VE's response to a hypothetical question limiting the hypothetical individual to sedentary work identified only jobs at the heavy and medium levels. (*Id.*). This testimony, Mr. Strother contends, conflicts with the DOT and the ALJ failed to resolve that conflict. (*Id.*). In response, the Commissioner contend the ALJ independently considered Mr. Strother's ability to perform his past relevant work without relying exclusively on the VE's testimony and, thus, any error in the hypothetical question posed was harmless. (*Id.* at pp. 29–36).

Social Security Ruling (SSR) 00-4p "is designed to identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by

a [VE] and information in the DOT." [5] *Davis v. Astrue*, No. 8:11-CV-2398-T-TGW, 2012 WL 6213124, at *7 (M.D. Fla. Dec. 13, 2012). Under SSR 00-4p, an ALJ "must: [i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs ... and information in the [DOT] ... and [e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p, 2000 WL 1898704, at *1. The Ruling further states that when a VE provides evidence about the requirements of a job or occupation, the ALJ "has an affirmative responsibility to ask about any possible conflict between that VE ... evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. Beyond this general duty to ask about possible conflicts, if evidence from a VE "appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict."[6] *Id.* Further, "[w]hen an ALJ identifies an apparent conflict that was not raised during a hearing, [the ALJ] can request an explanation of the conflict by submitting interrogatories to the vocational expert." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1363 (11th Cir. 2018) (citation and internal quotation marks omitted). "During or after the hearing, the ALJ is expected to take

---

[5] SSRs are agency rulings published under the Commissioner's authority and are binding on all components of the SSA. *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990). They are not binding on a court. *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981).

[6] The term "apparent conflict" is "taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT. Put another way, if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1366 (11th Cir. 2018).

6

notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.*

Under SSR 00-4p, "[n]either the DOT nor the VE ... evidence automatically 'trumps' when there is a conflict." SSR 00-4p, 2000 WL 1898704, at *2. Rather, the ALJ "must resolve the conflict by determining if the explanation given by the VE ... is reasonable and provides a basis for relying on the VE ... testimony rather than on the DOT information." *Id.*

"SSR 00-4p imposes an independent, affirmative obligation on the part of the ALJ to undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the VE if there is one." *Washington*, 906 F.3d at 1364. Pursuant to SSR 00-4p, the ALJ has an affirmative duty "to identify apparent conflicts, ask the VE about them, and explain how the conflict was resolved in the ALJ's final decision." *Id.* at 1365. In *Washington*, the Eleventh Circuit made clear that, because the Ruling implicates the substantive rights of benefits applicants, "we will require the agency to follow the procedure laid out in SSR 00-4p." *Id.* at 1361.

The ALJ's first hypothetical question to the VE stated the hypothetical individual was "not limited to all levels of exertion" and was limited to sedentary tasks. (Tr. 65). Specifically, the ALJ asked:

> If a hypothetical individual that is not limited to all levels of exertion, but is limited to understanding and carrying out no more than simple routine sedentary unskilled tasks with occasional decision making, occasional changes in the work setting and occasional interaction with others and avoidance of extreme heat temperatures, with those premises could such a hypothetical person [perform] any of

7

> the claimant's past occupations as actual performed [sic] or as generally performed in the economy?

(*Id.*).   The ALJ's second hypothetical question to the VE contained the same limitations but asked about other work rather than past relevant work.  (*Id.*).  Specifically, the ALJ asked:

> If a hypothetical closely [sic] a person of advanced age, and advanced age individual with a high school education and from the physical standpoint not limited to – I'm writing at the same time that I'm asking you this hypothetical – not limited to levels of exertion but has the limitations already mentioned in the first hypothetical is there any other work that such a hypothetical individual could perform?

(*Id.*).

In limiting the hypothetical individual to "understanding and carrying out no more than simple routine sedentary unskilled tasks," the ALJ ruled out jobs that were not sedentary. However, the VE identified the past relevant work job of houseman/cleaner, DOT # 323.687-018, which is at the heavy exertional level (Doc. 26-1) and three other jobs at the medium exertional level: hand packer, DOT # 920.587-018 (Doc. 26-2); assembler, DOT # 726.687-026 (Doc. 26-3); and machine tender, DOT # 524.685-010 (Doc. 26-4).  It is unclear whether the ALJ misspoke, or whether a mistake occurred when the hearing was transcribed.  In any event, none of the jobs identified by the VE comply with the hypothetical questions' limitation to sedentary tasks.  In testifying that these four jobs met the hypothetical questions' limitations that include the limitation to sedentary tasks, the VE testified in conflict with the DOT.

There are other inconsistencies within the assessed RFC and hypothetical questions posed to the VE. For example, the RFC limited Mr. Strother to repetitive tasks, but this limitation was not included in the hypothetical questions to the VE. (*See* Tr. 23, 65). The RFC also limited Mr. Strother to "basic decision-making," whereas the hypothetical questions included a limitation of "occasional" decision making. (*Id.*). The RFC limited Mr. Strother to "simple changes in the work setting," whereas the hypothetical questions do not include this limitation. (*Id.*).

The ALJ did not ask the VE whether his testimony conflicted with the DOT, in violation of SSR 00-4. In addition, the ALJ failed to identify and resolve inconsistency between the hypothetical questions' limitation to sedentary work and the exertional levels of the jobs identified by the VE. There are also other inconsistencies within the accessed RFC and hypothetical questions posed to the VE. For these reasons, the ALJ's decision is not supported by substantial evidence.

### 2. Whether the ALJ properly evaluated the medical evidence.

Mr. Strother argues the ALJ failed to properly weigh the medical opinion evidence. (Doc. 23, pp. 35–39). Specifically, Mr. Strother contends the ALJ failed to properly consider and weigh the opinions of consultative psychologist Kelly Gorman, Psy.D., state agency medical consultant Stephen Hirshorn M.D., state agency psychological consultant John Thibodeau, Ph.D., and treating psychologist Alexander Gimon, Ph.D. (*Id.*). In response, the Commissioner contends the ALJ properly considered the opinions of Drs. Hirshorn, Thibodeau, and Gimon, and the ALJ's failure to state the weight given to Dr. Gormon was harmless. (*Id.* at pp. 39–44).

9

### i. Dr. Gorman

The ALJ must state with particularity the weight given to different medical opinions and his reasons for doing so. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). The ALJ may reject any medical opinion if evidence supports a contrary finding, but he must still articulate reasons for assigning little weight. *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir. 1986). Provided his decision does not broadly reject a claim for Social Security benefits, the ALJ need not refer to every piece of evidence. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014). Although it is unnecessary to refer to every piece of evidence, the ALJ must consider all available evidence and articulate the weight given to probative evidence. *Id.*; *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

Dr. Gorman opined Mr. Strother had bipolar disorder. (Tr. 1195). Dr. Gorman also opined Mr. Strother had attention deficit hyperactivity disorder and found Mr. Strother had difficulty focusing or concentration, was distractible, and had difficulty finishing tasks. (Tr. 1196–97). Dr. Gorman opined Mr. Strother experienced occupational and social impairment with reduced reliability and productivity. (Tr. 1197). Specifically, Dr. Gorman diagnosed Mr. Strother with these symptoms:

> depressed mood; anxiety; suspiciousness; chronic sleep impairment; mild memory loss such as forgetting names, directions, or recent events; circumstantial, circumlocutory, or stereotyped speech; difficulty in understanding complex commands; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or a worklike setting;

10

> suicidal ideation; and impaired impulses control, such as unprovoked irritability with periods of violence.

(Tr. 1200). The ALJ did not mention or assign any weight to Dr. Gorman's opinion.

The Commissioner contends that the ALJ's failure to discuss or weigh Dr. Gorman's opinion is harmless because Dr. Gorman's opinion did not describe any clear functional limitations and his notes contained minimal objective medical findings. (Doc. 23, pp. 39–42). Courts should refrain from affirming an ALJ's decision "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (citation omitted). The ALJ's failure to mention or state the weight assigned to Dr. Gorman's opinion is reversible error.

### ii. State Agency Consultant Dr. Thibodeau

Dr. Thibodeau found Mr. Strother moderately limited in these abilities:

> to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting.

(Tr. 427–29). The ALJ gave great weight to Dr. Thibodeau's opinion. (Tr. 31).

State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1527(e). The ALJ

11

incorporated aspects of Dr. Thibodeau's opinion into the RFC, by limiting Mr. Strother to simple, routine, unskilled work and no more than occasional interaction with the others. (Tr. 23, 427–29).

Contrary to Mr. Strother's assertion, the ALJ was not required to expressly incorporate all aspects of Dr. Thibodeau's opinion into the RFC, nor was the ALJ required to discuss or weigh each aspect of Dr. Thibodeau's opinion. *See Glover v. Colvin*, 705 F. App'x 815, 817–18 (11th Cir. 2017) (holding that substantial evidence supported the ALJ's RFC finding, which accounted for multiple aspects of the opinion from the consultative examiner, and the ALJ was not required to discuss every piece of evidence). The ALJ properly considered and weighed Dr. Thibodeau's opinion.

### iii.    State Agency Consultant Dr. Hirshorn

Dr. Hirshorn found Mr. Strother suffered from the severe impairments of fractures of lower limb and depressive, bipolar, and related disorders. (Tr. 458–59). Dr. Hirshorn found Mr. Strother able to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk (with normal breaks) about 6 hours in an 8-hour workday, and sit (with normal breaks) about 6 hours in an 8-hour workday. (Tr. 461). Dr. Hirshorn opined Mr. Strother could perform medium work. (Tr. 458–59).

Although the ALJ gave reasons for affording little weight to Dr. Hirshorn's opinion regarding Mr. Strother's limitation to medium work, he fails to evaluate or give reasons for not accepting Dr. Hirshorn's opinion regarding Mr. Strother's lower limb impairment. (*See* Tr. 22). On remand, the ALJ should consider this opinion.

### iv.     Treating Physician Dr. Gimon

When confronted with the opinion of a claimant's treating physician, the ALJ must afford it substantial and considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Bliss v. Comm'r of Soc. Sec.*, 254 F. App'x 757, 758 (11th Cir. 2007) ("An ALJ may reject the opinion of a treating physician, which ordinarily receives substantial weight, where 'good cause' is established."). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004).

"Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court may not "disturb the ALJ's refusal to give the opinion controlling weight." *Carson v. Comm'r of Soc. Sec.*, No. 08–13217, 2008 WL 4962696 at *1 (11th Cir. Nov. 21, 2008). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (holding the ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight").

The ALJ recognized Dr. Gimon's opinions and articulated reasons amounting to good cause for giving little weight to those opinions. (Tr. 31-32). As explained by the ALJ, Dr. Gimon treated Mr. Strother since 2016, but offered opinions about his condition in 2010 and childhood. (Tr. 32, 688, 691). Dr. Gimon's extreme limitations also conflicted with his own medical records, which showed mild to moderate objective findings with conservative treatment. (Tr. 31–32, 681-95, 1454, 1465–97). Thus, substantial evidence supports the ALJ's articulated reasons for giving little weight to Dr. Gimon's opinions.

### 3. Whether the ALJ erred in finding Mr. Strother had no severe impairments and exertional limitations.

Mr. Strother argues the ALJ erred in finding Mr. Strother had no severe impairments and no exertional RFC limitations. (Doc. 26, pp. 44–46). Specifically, Mr. Strother argues that the ALJ failed to consider the medical records concerning his back problems and a lower limb fracture. (*Id.*). In response, the Commissioner argues the ALJ properly limited Mr. Strother's severe impairments to bipolar disorder, unspecified personality disorder, and ADHD. (*Id.* at pp. 46–48).

The ALJ stated that the medical record contained very limited findings on Mr. Strother's physical conditions, aside from some chiropractic treatment for back stiffness and annual check-ups. (Tr. 21-22). As stated above, the ALJ did not give reasons for rejecting state agency medical consultant Dr. Hirshorn's finding that Mr. Strother suffered from a severe impairment of fractures of lower limb. In addition, chiropractors Jason Napuli, D.C. and Ryan Diana, D.C. assessed Mr. Strother with mechanical back pain with associated muscle stiffness. (*See* Tr. 723, 751, 785, 808,

829, 859, 889, 917, 945, 982, 1021, 1054, 1064, 1084, 1096, 1101, 1102, 1107, 1127, 1204, 1205, 1233, 1251, 1320, 1339, 1388). Those diagnoses with objective medical findings upon physical examination may be sufficient to satisfy the low threshold for a severe impairment finding. *See Jackson v. Astrue*, No. CA 09-0807-C, 2010 WL 2573508 (S.D. Ala. June 21, 2010) (reversing the ALJ's finding of no severe impairment where evidence showed that the claimant visited doctors on numerous occasions and received injections for her chronic back pain); *Lavinskey v. Astrue*, No. C.A. 07-0700-C, 2008 WL 895722 (S.D. Ala. 2008) (finding that back pain was a severe impairment).

The issue at step two is not whether Mr. Strother's back pain and limb fracture are disabling, but "whether such impairment[s] results in more than minimal functional limitations and restrictions on the claimant's ability to engage in work-related activity." *See Lavinskey*, 2008 WL 895722 at *3. The medical evidence presented may be sufficient to satisfy the low or de minimis standard for a severe impairment. On remand, the ALJ's should reconsider Mr. Strother's back pain and limb fracture at step two.

## IV.   CONCLUSION

The Commissioner's decision is not supported by substantial evidence and should therefore be **REMANDED** for further consideration consistent with this report and recommendation.

**RECOMMENDED** in Tampa, Florida, on April 27, 2020.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge

### NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.